## WALLACE T. WRAY, Respondent. v. THE WABASH RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, December 20, 1911.**

1. **MASTER AND SERVANT: Railroads: Negligence: Contributory Negligence.** Plaintiff was an engineer in the employ of defendant. He was injured by his engine colliding with the train of another railroad company at a point where the roads cross each other. Plaintiff had not run an engine over this part of defendant's road for two years before the night of the accident. The two roads ran side by side for two or three miles before crossing. Half a mile before reaching the crossing defendant maintained a signboard to warn the trainmen of their approach to the crossing. The collision was the result of the fact that the electric headlight on plaintiff's engine failed to furnish sufficient light to disclose the signboard. The failure of the headlight to furnish sufficient light was the result of the inability of the engine to furnish enough power to generate the electricity necessary to make the light efficient. The defendant contended that there were several circumstances which if plaintiff had been in the exercise of ordinary care, would have enabled him to know of the location of the crossing, and of the presence of the other train thereon, and that if he were in doubt as to the location of the crossing he should have inquired of the fireman who was familiar with the location. Under the evidence it was for the jury to say whether the defendant was guilty of negligence and whether plaintiff was guilty of contributory negligence.

2. **PRACTICE: Trial: Instructions: Witness Swearing Falsely.** Even though the plaintiff on cross-examination gives evidence differing from former statements made by him, the trial court may in its discretion refuse to give to the jury an instruction advising them of their right to disregard the whole of the evidence of any witness who has sworn falsely to any material fact.

3. ———: ———: **Admissions Against Interest.** Defendant asked the court to instruct the jury that plaintiff was bound by his admissions, if any, *contrary to his testimony given on the witness stand.* The court modified the instruction by saying that the plaintiff was bound by his admissions, if any, *against his interest.* Defendant's objection to the modification was properly overruled.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*J. L. Minnis* and *Robertson & Robertson* for appellant.

*M. J. Lilly* and *Phillips & Phillips* for respondent.

BROADDUS, P. J.—In this action plaintiff claims that he was injured on the 12th day of February, 1910, by reason of a defect in one of defendant's locomotive engines. He was in charge of the engine in question in a train running from Moberly to Council Bluffs. He was an experienced engineer, but had not made a run over this part of defendant's road for a period of two years, although he had been familiar with it previously.

Plaintiff was injured by reason of his train coming in collision with that of a train of the Quincy, Omaha & Kansas City Railroad at a point where they cross, between the stations of Jameson and Pattonsburg. After passing through Jameson going in a northwesterly direction there is a down grade for something over a mile, after which the track is straight and level to said crossing. There was a board on the right hand side of the track at a distance of one-half mile in advance to indicate the crossing of the two roads, which is called the half mile board or crossing board.

The engine in question known as No. 656, was equipped with an electric headlight which was operated by steam. The apparatus of the headlight was in good condition, but would not furnish light unless there was a pressure of 110 pounds of steam, and not a good light unless there was a pressure of at least 130 pounds. A man by the name of Zellner was the reg-

ular fireman and was familiar with the road. It was shown that the engine was of peculiar construction, in that, the distance between the crown sheet of the boiler head and the fire-box was about seven feet, a distance much greater than that of any other engine in use on that particular division, except one. It was shown that this engine did not "steam well." The fireman had previously had trouble with the engine for the cause mentioned.

On the trip in question the steam varied from 80 to 150 pounds, consequently, there was an absence of headlight whenever the steam fell below 110 pounds. After passing Jameson it was out or burned dimly, and from the time plaintiff reached the foot of the hill and came to level ground, where he shut off the engine, there was no headlight. The plaintiff knew that the crossing was somewhere ahead after he reached the foot of the hill, and from the time he reached the level track kept a lookout for the crossing board. He failed to see the board because of the failure of the headlight. In approaching the crossing there is a bridge where plaintiff realized that he was getting near the crossing board and shut off the steam and commenced to look, or as expressed by trainmen, to "feel" for the crossing board. He failed to see it for want of sufficient light, and the first knowledge he obtained that he had passed the board was when he saw a light from the fire-box of the Quincy, Omaha and Kansas City engine at the crossing, which was so near that he was unable to stop and the engine collided with the side of the other train, overturning the engine and breaking his leg.

It was an early winter morning, very cold and quite dark. It was shown that although the headlight was operated by steam it could be operated separately from the engine from the surplus steam that was required to operate the engine. There was evidence to the effect that under ordinary conditions the method at

night for locating the crossing would be by the crossing board, and an engineer could not locate it under such condition unless his familiarity was such that he knew its location at night as well as by day.

The bridge before reaching the crossing board was a high trus bridge and it was shown that the fireman and a passenger, who was on the train, recognized the bridge by the sound the train made in passing over it, and by this means were able to locate the crossing board.

Defendant introduced evidence to the effect that for two or three miles the two roads ran parallel, and gradually approached each other before the crossing was reached; that the crew of the other train, few in number, testified that they had a headlight on their train and lights in the cab and signal lights on the caboose; that their train stopped at the proper place before starting over the crossing, that it sounded the whistle for the stop and again for the start; that the headlight of defendant was burning as it approached the crossing and it was discovered by them back a mile or two and was seen at different places as it approached the crossing. Defendant's evidence as a whole tends to show that plaintiff's injuries were the result of his own negligence. On cross-examination of plaintiff his evidence differed somewhat from a former statement made by him in regard to the facts of the case.

The court refused defendant's instructions 8 and 9 as asked and modified them. Instruction 8 as asked reads as follows: "The court instructs the jury that if you believe from the evidence in this case that any witness sworn in the case has intentionally or willfully sworn falsely to any material fact in issue in this case, then you are at liberty to disregard the whole of the evidence of such witness; and you are further instructed that you are the sole judges of the weight of the evidence and credibility of the witnesses; and

in considering what weight and credit you shall give to the testimony of any witness you will take into consideration the interest of such witness in the result of the trial, his attitude toward the trial, and his conduct upon the witness stand, and you will take into consideration all of the other facts and circumstances given in evidence in the case.'' As given it reads as follows: ''The court instructs the jury that you are the sole judges of the weight of the evidence and the credibility of the witnesses; and in considering what weight and credit you shall give the testimony of any witness you will take into consideration the interest of such witness in the result of the trial, his attitude toward the trial, and his conduct upon the witness stand, and you will take into consideration all of the other facts and circumstances given in evidence in the case.''

Instruction 9 as asked reads as follows: ''The court instructs the jury that admissions made by a party to a case against his interest are always admissible in evidence against him; and if you believe from the evidence in this case that the plaintiff has in fact made admissions contrary to his testimony given from the witness stand, then you will, in passing upon this case, take such admissions into consideration.'' As given it reads as follows: ''The court instructs the jury that admissions made by a party to a case against his interest are always admissible in evidence against him; and if you believe from the evidence in this case that the plaintiff has in fact made admissions against his interests, then you will, in passing upon this case, take such admissions into consideration.''

The plaintiff recovered judgment for $1500 from which the defendant appealed. The principal contention of defendant is that plaintiff was not entitled to recover under the evidence.

If plaintiff's evidence is to be taken into consideration, his injury was caused by want of power in the

engine to generate sufficient steam to operate the head-light at the time and under the circumstances. Not-withstanding the lines of the two roads ran parallel for some miles before the crossing was reached and that the engine, caboose and other parts of the train on the other road were lighted and plaintiff could have seen them had he looked, it was still a question for the jury to say had he looked would they have indi-cated to him the position of the crossing in time for him to have avoided the collision. The mere fact that the courses of the two roads within seeing distance of each other ran parallel for a distance of two miles before reaching the crossing, would not, we imagine, indicate to plaintiff on a dark night the exact position of such crossing. Common observation teaches us that lights outside of the line of the engineer's vision look-ing ahead would not be a safe guide for him in the management of his train. He must rely on what he can see on the track before him. He says he did see the other engine when it stopped at the crossing, but it was too near at that time to prevent collision. When it is remembered that the plaintiff had not been on the line for two years, and the night being very dark, it would not be reasonable to conclude that he would have been able, without the aid of a sufficient headlight, to see the crossing board. It is true the fireman and a passenger knew the crossing was just ahead when the train passed over the bridge. But their knowl-edge was derived from the fact that they were famil-iar with the location, an advantage which the plain-tiff evidently did not have at that time. And the fact that he did not make inquiry of the fireman as to the location of the crossing is not conclusive evidence of negligence on the part of the plaintiff. It may per-haps have been the better course to have pursued, but as the crossing boards are placed by the company for the express purpose of governing the action of engi-

neers, under the circumstances, it was for the jury to say whether the light being poor plaintiff should have sought information from the fireman.

The argument of appellant to the effect that the engine was in no way defective and for that reason the plaintiff failed to make out a case is of no force. Although the engine as a mechanical construction was good, it was generally defective for the purposes for which it was used, for the reason that under the conditions existing at the time in question it lacked the capacity of producing sufficient steam to operate the headlight successfully.

Instruction 8 should not have been given as asked. Because a witness under severe and critical cross-examination may in some respects make statements that differ from former statements made by him about the same matter is not sufficient cause to impute to him wilful perjury, and for that reason the court was justified in refusing to instruct the jury as asked making wilful perjury of plaintiff an issue in the case. The court gave one in its stead that was entirely proper and of which appellant has no good cause to complain.

We do not think the change made in the expression in No. 9 as to admissions made by plaintiff different from his sworn evidence, to that of admissions contrary to his interest was error. The latter is the better expression of the law, as it could only be admissions relating to the interest of the witness that could affect his credibility. Admissions that did not affect his interest were immaterial and did not go to his credibility. Other questions raised in the argument we do not think of sufficient importance to discuss. Upon the whole the cause was well tried and it seems to us the judgment was for the right party. Affirmed. All concur.